UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
WALTER SARTIN
                      Plaintiff

                                                    COMPLAINT
                                                    JURY TRIAL DEMANDED
      --Against--                                06-Cv-5140 (AKH)


GT PAYROLL SYSTEMS,
DIVERSITY SERVICES/DIVERSITY STAFFING,
TEAM HEALTH CARE, DONNA CHATMAN
*in her individual capacity as an aider and abettor*,
STACY STROTHER, *in her individual capacity
as an aider and abettor*
                                   Defendants
---------------------------------------------------------x

       WALTER SARTIN, by and through his attorneys, LAW OFFICES OF AMBROSE WOTORSON, alleges as follows:

       I.        INTRODUCTION

       1.        This action is brought pursuant to 42 U.S.C. 2000(e) because plaintiff contends that the terms, conditions and privileges of plaintiff's employment relationship with defendants were adversely affected, in part, because of his sex, because of sexual harassment, and because of his opposition to the aforementioned discriminatory practices. Plaintiff contends that he would not have been terminated but for his opposition to what he reasonably perceived to be sexual harassment. Plaintiff also contends that he worked numerous overtime hours and that defendants have failed to compensate him for the same.

       II.       JURISDICTION

       2.        This Court's jurisdiction is invoked under 42 U.S.C. Section 2000(e) and 29 U.S.C. Section 216 et seq. Venue is proper as the operating events occurred within this judicial district.

III.     PARTIES

3.     WALTER SARTIN, hereinafter, "plaintiff," was employed at all relevant times by defendants, GT PAYROLL SYSTEMS, DIVERSITY SERVICES/ DIVERSITY STAFFING, and TEAM HEALTH CARE. Sartin resides at 339 North Fifth Street, Level 2, Newark, New Jersey, 07107.

4.     GT PAYROLL SYSTEMS, DIVERSITY SERVICES/DIVERSITY STAFFING, and TEAM HEALTH CARE are corporations which employed plaintiff. There principal places of business are located in New York City at 295 Madison Avenue, New York, New York 10013.

5.     At all relevant times, DONNA CHATMAN *in her individual capacity as an aider and abettor*, worked as the Director of Nursing for DIVERSITY SERVICES, while STACY STROTHER, *in her individual capacity and as an aider and abettor,* worked as the President of DIVERSITY SERVICES. Their individual addresses are unknown at this time.

IV.     FACTUAL AVERMENTS

6.     Plaintiff's time, attendance and work performance have, at all times, been fully satisfactory since his employment began on September 2004.

7.     The terms, privileges and conditions of plaintiff's employment relationship with defendants were adversely affected by discrimination and/or retaliation in the following ways:

    a.     Beginning in or around October 2004, plaintiff was promoted from the position of Payroll Assistant to the position of Payroll and Office Manager.

    b.     From October 2004, plaintiff began to work an average of 12 overtime hours a week, and he was not compensated for the same, even though he was, officially, a non-managerial employee.

c. In the third week of November 2004, Stacey Strother, the President of Diversity Services, told plaintiff that his overtime hours were "killing [her] profit margin," but that she needed him to work overtime in order to "get the job done." In the presence of two witnesses, Strother told plaintiff to falsely only record 40 hours per week on his time sheets.

d. On or about January 2005, the President of Team Health Care and Director of Nursing at Diversity Services, Donna Chatman, began to subject plaintiff to unwanted sexual comments. For example, Chatman would in a pervasive manner, call plaintiff sexy and baby; she would tell plaintiff she bet he had a "big dick," that she could "whip [her] pussy on [plaintiff];" that she had a "good pussy;" that she gave "good head" and that she was only woman that plaintiff "...would ever need."

e. However, since 1994, plaintiff has had sexual relationships exclusively with men. Moreover when Chatman would make these sexually suggestive comments to plaintiff, plaintiff would always inform her that he was not attracted to her, that her comments were inappropriate and that she should stop, because it was making him uncomfortable and the comments were interfering with his work.

f. In fact, plaintiff immediately complained, in January 2005 to Gary Feemster, who was the Director of Operations, and Stacy Strother, the President of Diversity Services, that he was being subjected to unwelcome sexual comments from Chatman. Both Feemster and Strother told plaintiff

3

      that they would "take care of it." However, Strother confirmed that Chatman had sexually harassed another male employee and that, in her view, Chatman was merely looking for a new person to so harass.

g.    The sexual harassment escalated despite plaintiff's complaints. Indeed, commencing in March 2005, Chatman would grab plaintiff's biceps, massage his neck, rub his chest and invade his personal space. Chatman did this in a pervasive manner, and plaintiff would tell Chatman to cease her activities whenever she engaged in such misconduct with him.

h.    When plaintiff learned that management was contemplating placing Chatman in the same office with plaintiff, plaintiff complained to the acting Manager of Operations, Pamela Patino. Plaintiff requested that he not be placed in the same office with Chatman because she had previously sexually harassed him, and because she had a history of sexually harassing other men. As a result, Patino moved plaintiff into her (Patino's) office.

i.    Thereafter, in February 2005, Patino witnessed Chatman rubbing on plaintiff's chest and shoulders, and overheard plaintiff protesting to Chatman that her conduct had to stop and that it was inappropriate.

j.    Chatman's misconduct continued.

k.    In August 2005, Chatman began to rub one of plaintiff's thighs in the presence of Feemster, Strother, Karin May, a sales person, and Priscilla Diaz, a payroll assistant.

l.    Strother, the President of Diversity Services, simply laughed at Chatman's behavior.

      m.    On or about October 13, 2005, Chatman grabbed plaintiff's buttocks and stated, "you have a nice tight ass."

      n.    Upset, plaintiff complained, once again, about this behavior to Stacy Strother. This time, however, plaintiff stated that he was not going to stand for such mistreatment any further.

      o.    On or about October 18, 2005, Strother terminated plaintiff's services on the pretextual basis that the company was "over the budget."

      p.    On information and belief, plaintiff was the only person so affected by the company being "over the budget."

      q.    On information and belief, the real reason for plaintiff's termination was that he constantly complained about being subjected to sexual harassment.

      r.    On information and belief, plaintiff had earned 624 hours of overtime pay, but was not compensated for the same.

8. Plaintiff has been unable, despite reasonable efforts, to find comparable employment and/or to ameliorate her employment situation.

9. As a proximate result of defendants' illegal acts towards plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

10 As a further proximate result of defendants' illegal actions towards plaintiff, plaintiff has suffered and continues to suffer impairment and damage to his good name and reputation.

11.     As a further proximate result of defendants' illegal actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

12.     The conduct of defendants was outrageous and malicious, and was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights.

V.      CAUSES OF ACTION

FIRST CAUSE OF ACTION

13.     Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

14.     By discriminating against plaintiff on account of his sex, by sexually harassing plaintiff, by allowing him to be sexually harassed without intervention, and by terminating plaintiff's employment, in part, because he complained about such discrimination, defendants violated 42 U.S.C. Section 2000(e), Section 296 of the New York State Human Rights Law and Section 8-107(1) (a) of the New York City Human Rights Law.

SECOND CAUSE OF ACTION

15.     Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

16.     By refusing to pay plaintiff overtime hours worked and by telling him to conceal the same, plaintiff's violated the Fair Labor Standard's Act, 29 U.S.C. Section 216 et seq., with knowing and/or reckless disregard for the Act's proscriptions.

VI.     PRAYER FOR RELIEF

6

WHEREFORE, plaintiff prays that this Court grant to him judgment containing the following relief:

a. An award of damages to be determined at the time of trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

b. An award of punitive and/or liquidated damages to be determined at the time of trial as against any individual defendants;

c. An award of reasonable attorney fees and the costs of this action and,

d. Such other and further relief as this Court may deem just and proper; and

e. reinstatement or any other equitable relief available, including an injunction against the adverse actions complained of herein.

Dated: Brooklyn, New York
       July 6, 2006

>       Respectfully Submitted,
>       Law Offices of Ambrose Wotorson, P.C.
>       By_____/s/_____
>       Ambrose W. Wotorson (AWW—2412)
>       26 Court Street, Suite 1811
>       Brooklyn, New York 11242
>
>       718-797-4861