UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

WALTER SARTIN,                                    06 CV 5140 (AKH)

                              Plaintiff,       DEFENDANTS'
                                          LOCAL RULE 56.1
                                          STATEMENT

           - against –

GT PAYROLL, INC., DIVERSITY STAFFING, INC.,
TEAM HEALTHCARE, DONNA CHATMAN,
*in her individual capacity and as aider and abettor*,
and STACY STROTHER, *in her individual capacity
and as aider and abettor*,

                                     Defendants.
-----------------------------------------------------------------X

       Defendants GT Payroll, Inc., Diversity Staffing, Inc. and Team Healthcare, by their attorneys, the Law Offices of Gail I. Auster and Associates, P.C. and Robert D'Emilia, Esq., co-counsel, submits Defendant's Statement Pursuant to Local Civil Rule 56.1:

**Background**

       1.     GT Payroll Inc. ("GT Payroll") is a domestic business corporation that makes weekly payroll payments to its temporary workers who are assigned to various customers or clients to work on an hourly basis. (Scheck Aff., para. 2).

       2.     The placements made with respect to such temporary hourly workers are coordinated by various staffing companies who report such hours to GT Payroll so that GT Payroll can pay its employees (such staffing companies include the staffing company known as Diversity Staffing, Inc.). (Scheck Aff., para. 2).

       3.     Plaintiff was employed by GT Payroll (Ex. 9, 12/18/07 Tr. At 106).

4. Plaintiff's paychecks and W-2 statements were from GT Payroll (Scheck Aff., Ex. E).); Scheck Aff. Ex. A, B and C).

5. GT Payroll's temporary workers are assigned to various customers or clients to work on an hourly basis (Scheck Aff., para. 2).

6. While employed by GT Payroll, Plaintiff received three temporary assignments during the period between May 11, 2004 and October 18, 2005 (Scheck Aff., para. 3 (a)and (b)).

7. Paintiff's first two assignments each lasted one day (Scheck Aff., para. 3 (a) and (b); Ex. A, B and D).

**Plaintiff's assignment at Diversity Staffing, Inc.**

8. For Plaintiff's third temporary assignment, he was placed by his employer, GT Payroll, to work at Diversity Staffing, Inc. ("Diversity") (Scheck Aff., para. 3 (c); Ex. C).

9. The assignment to Diversity extended from Thursday, September 30, 2004 through Tuesday, October 18, 2005. (Scheck Aff., para. 3 (c); Ex. C).

10. Diversity is a staffing company which places temporary workers at various customers, and at times has also placed temporary workers on its own in-house staff. (Strother Aff., para. 3).

11. Plaintiff was placed by GT Payroll at Diversity as an in-house temporary employee. (Scheck Aff., para. 3 (c); Ex. C).

12. Plaintiff was initially placed at Diversity as a payroll assistant (Ex. 9, 12/18/07 Tr. at 112-113).

13. Plaintiff began as the payroll assistant to Joe Valentin, who at that time was the Payroll and Office Manager. (Strother Aff., para. 5).

14. As the Payroll and Office Manager, Mr. Valentin was a salaried staff employee and

was not paid overtime (Strother Aff., para. 5).

15. Plaintiff's pay rate was $16.00 per hour when he was initially assigned to work at Diversity (Scheck Aff., Ex. D).

16. For the first three weeks of his Diversity assignment, while Plaintiff was Mr. Valentin's payroll assistant, Plaintiff was paid overtime by GT Payroll (Scheck Aff. Ex. D; Ex. 10, 4/17/08 Tr. at 317).

### Plaintiff's Promotion to Payroll and Office Manager

17. Approximately three weeks after Plaintiff was placed at Diversity, Mr. Valentin's employment was terminated and Plaintiff was promoted to the position of Payroll and Office Manager, as a temp. (Strother Aff., para. 5; Ex. 9, 12/18/08 Tr. at 115).

18. Thereafter, Plaintiff performed all the job duties and responsibilities that had previously been performed by Mr. Valentin as a salaried exempt employee. (Strother Aff., para. 5; Ex. 10, 4/17/08 Tr. at 268).

19. Plaintiff took over the role previously held by Mr. Valentin "completely" (Ex. 10, 4/17/08 Tr. at 308).

20. Following his promotion, Plaintiff was no longer paid overtime (Scheck Aff. Ex. D; Ex. 10, 4/17/08 Tr. at 268;).

21. Plaintiff's pay rate was increased to $17.00 per hour and again to $19.00 per hour within his first two months as Payroll and Office Manager (Scheck Aff., Ex. D).

22. Plaintiff's primary duty as the Payroll and Office Manager was office work directly related to the general business operations of Diversity.

### Plaintiff used his independent judgment in the performance of his duties.

23. In the position of Payroll and Office Manager, Plaintiff used his independent

judgment (Ex. 10, 4/17/08 Tr. at 268).

24. Plaintiff took over the "whole payroll department" (Ex. 10, 4/17/08 Tr. at 313).

25. Plaintiff "made the department [his] own" (Ex. 10, 4/17/08 Tr. at 313-314).

26. In the position of Payroll and Office Manager, Plaintiff created special invoicing (Ex. 9, 12/18/07 Tr. at 125), prepped payroll (Ex. 9, 12/18/07 Tr. at 126-127), checked for accuracy (Ex. 9, 12/18/07 Tr. at 128-129, 130), resolved payroll issues for four companies (Ex. 9, 12/18/07 Tr. at 122-123; 128), had replacement checks cut if there was a payroll problem (Ex. 9, 12/18/07 Tr. at 127) and provided special handling for particular clients (Ex. 9, 12/18/08 Tr. at 134).

27. In addition, as the Payroll and Office Manager, Plaintiff interviewed Priscilla Diaz, and recommended her to become his payroll assistant (Ex. 10, 4/17/08 Tr. at 268-269).

28. Plaintiff's recommendation to bring Ms. Diaz into Diversity as his payroll assistant was followed by Stacey Strother, the president of Diversity (Ex. 10, 4/17/08 Tr. at 269, 270).

29. Plaintiff became Ms. Diaz's supervisor (Ex. 9, 12/18/07 Tr. at 107).

30. Plaintiff determined Ms. Diaz's hourly base pay rate and the number of hours she would work (Ex. 10, 4/17/08 Tr. at 268-269).

31. In the position of payroll assistant, Ms. Diaz's pay rate was $16.00 per hour (Strother Ex., para. 10).

32. Plaintiff trained Ms. Diaz, and had her doing filing, invoicing, and review of invoicing (Ex. 10, 4/17/08 Tr. at 270).

33. Ms. Diaz assisted Plaintiff in doing payroll (Ex. 10, 4/17/08 Tr. at 270).

34. Plaintiff reviewed Ms. Diaz's work for accuracy, corrected her mistakes and showed her where she had made a mistake (Ex. 10, 4/17/08 Tr. at 351).

35. The Acting Operations Director, Pamela Patino, testified that plaintiff had "his own world of responsibilities" as the Payroll and Office Manager (Ex. 11, Patino Tr. at 56).

36. Plaintiff testified that in spite of the fact that he took over Mr. Valentin's position and responsibilities, unlike Mr. Valentin, he believed that he was a non-exempt employee entitled to be paid for overtime for any hours worked in excess of 40 hours per week because he was a temp, rather than a staff employee (Ex. 10, 4/17/08 Tr. at 329, 330).

**Plaintiff Kept Track of his time through his Timesheets**

37. As a temporary employee placed at Diversity by GT Payroll, Plaintiff filled in a weekly timesheet at the end of each work day (Ex. 10, 4/17/08 Tr. at 278).

38. Plaintiff signed his weekly timesheet at the end of each week (Ex. 10, 4/17/08 Tr. at 276, 277).

39. The way that Plaintiff kept track of his hours worked at Diversity was through his timesheets (Ex. 10, 4/17/08 Tr. at 278).

40. The timesheets that Plaintiff signed stated that his signature attested to the accuracy of the hours recorded (Scheck Aff., Ex. C; Ex. 10, 4/17/08 Tr. at 284).

41. The hours that Plaintiff wrote in his timesheets were consistently 9 a.m. to 6 p.m. each day, five days per week (Scheck Aff., Ex. C).

42. Plaintiff was paid based on the hours that he reported on his time sheets (Scheck Aff., para. 3 (c), Ex. A, B, C and D; Strother Aff., para. 3).

43. Plaintiff was paid for all hours reported on his time sheets (Scheck Aff., Ex. C and Ex. D).

44. Plaintiff had no expectation of being docked for time during the workday that he did not work (Ex. 10, 4/17/08 Tr. at 302-303).

45. There is no allegation that during the period of his employment plaintiff ever complained to his employer, GT Payroll, about non-payment of overtime (Scheck Aff., para. 7).

46. Plaintiff's job responsibilities as Payroll and Office Manager included keeping track of the hours that other employees worked and for which they were paid (Ex. 1 –EEOC charge, Aff. Walter Sartin, para. 2).

47. Plaintiff failed to produce any records that would show that he worked extra hours for which he was not paid in addition to the hours for which he was paid.

48. Plaintiff is not sure if he filed his tax returns in 2005 and/or 2006 (Ex. 10, 4/17/08 Tr. at 236-237).

**Plaintiff reported falsely verified time worked on his timesheets**

49. Unlike Plaintiff, Mr. Valentin, Plaintiff's predecessor, did not have a payroll assistant until Plaintiff was placed at Diversity (Strother Aff., para. 3).

50. Plaintiff engaged in time-consuming use of the Diversity computer and telephone/internet systems during working hours that he verified on his timesheets as working hours devoted to the work of Diversity (Strother Aff., para. 3).

51. On Thursday, July 12, 2005, Plaintiff exchanged 8 e-mails with mails with Damon Williams, his former boyfriend, while Plaintiff was at work at Diversity (Strother Aff., Ex. B). He reported this time as work time on his timesheet for that day (Scheck Aff., Ex. C).

52. Plaintiff admitted that on Wednesday, July 20, 2005, in the span of four hours, he exchanged 24 e-mails with Mr. Williams while Plaintiff was at work at Diversity (Ex. 10, 4/17/08 Tr. at 290; 302; Strother Aff., Ex. C) from his computer on his desk (Ex. 10, 4/17/08 Tr. at 290-291). Again, he reported this time as work time on his timesheet for that day (Scheck Aff., Ex. C).

53. On that same day, July 20, 2005, Plaintiff took time off from work in the middle of

the day to go to his gym, which he falsely reported as time worked on his timesheet (Strother Aff., Ex. C; Scheck Aff., Ex. C).

54. On that same day, after returning from the gym, Plaintiff then took additional time to eat lunch which he falsely reported as time worked on his timesheet (Strother Aff., Ex. C; Scheck Aff., Ex. C).

55. Plaintiff testified that he was entitled to be paid for this time. (Ex. 10, 4/17/08 Tr. at 302-303).

56. There were no deductions made to his weekly paychecks based on the quality of his work. (Ex. 10, 4/17/08 Tr. at 334).

57. Plaintiff's assignment at Diversity ended on October, 18, 2005 (Scheck Aff., para. 3 (c); see also, last page of Ex. C).

58. Priscilla Diaz, the payroll assistant, took over Plaintiff's responsibilities after his assignment at Diversity ended, in addition to continuing her own responsibilities (Strother Aff., para. 3).

59. After Priscilla Diaz took over Plaintiff's responsibilities, she routinely completed all the work within 40 hours a week (Strother Aff., para. 3).

60. After Ms. Diaz took over Plaintiff's responsibilities, her wage rate was increased to $17.00 per hour (Strother Aff., para. 10).

61. At the time that Plaintiff's assignment at Diversity ended, his wage rate was $21.00 per hour (Scheck Aff., Ex. D).

62. Ms. Diaz did not have a payroll assistant (Strother Aff., para. 3).

**Complaint to Department of Labor resulted in no action against Corporate Defendants**

63.     Shortly after the end of Plaintiff's assignment at Diversity, Plaintiff filed a complaint with the Department of Labor that he had not been paid overtime payments that were due to him. (Ex. 10, 4/17/08 Tr. at 339-340.)

64.     Fred Scheck, who is responsible for overseeing the financial functions of GT Payroll, Inc. ("GT Payroll") (Scheck Aff., para. 1) and Stacey Strother were thereafter was contacted by an investigator from the United States Department of Labor who came to review Plaintiff's pay history in connection with an overtime claim (Scheck Aff., para. 8; Strother Aff., para. 11).

65.     Following this investigation, no charges were ever brought by the Department of Labor against any of the Corporate Defendants named in this action with regard to Mr. Sartin's claim of unpaid overtime (Scheck Aff., para. 8; Strother Aff., para. 11).

66.     Plaintiff thereafter filed the present lawsuit, in which he claims that he worked 624 overtime hours for which he was not paid (Ex. 5).

**The EEOC Charge**

67.     On or about October 24, 2005, Plaintiff filed an EEOC charge against GT Payroll and Diversity alleging sexual harassment and retaliatory discharge for complaining about the sexual harassment (Ex. 1).

68.     Plaintiff was paid by GT Payroll, which issued his paychecks and W-2 statement (Scheck Aff., Ex. D and E).

69.     Plaintiff was not paid by Diversity (Scheck Aff., Ex. D and E).

70.     Team Healthcare was not named in the EEOC charge dated October 24, 2005 (Ex. 1).

71.     Plaintiff thereafter retained counsel, who sent a letter to the EEOC dated March 6, 2006 in which he represented that Plaintiff wished to amend Plaintiff's charge, to add C&H Staffing and Team Healthcare (Ex. 12).

72.     In his document production, Plaintiff produced an additional EEOC Charge of Discrimination which contained a hand written notation "Amended" and named C&H Staffing and Team Healthcare as additional charged parties (Ex. 2).

73.     The EEOC Charge of Discrimination which contained a hand written notation "Amended" also had the handwritten words "See Attached" in the box on the form in which a charging party is to allege the particulars of the charge or amendment (Ex. 2).

74.     The "Amended" EEOC Charge of Discrimination which purported to add C&H Staffing and Team Healthcare was unsigned, undated, not notarized and had no attachment (Ex. 2).

75.     Plaintiff was not paid by Team Healthcare (Scheck Aff., Ex. E).

76.     Plaintiff has not alleged that Team Healthcare had actual notice that a charge had been filed with the EEOC naming Team Healthcare as a Charged Party.

77.     The "amended" charge against Team Healthcare does not specify the actions or practices of Team Healthcare that were allegedly discriminatory (Ex. 2).

78.     Nonetheless, Plaintiff proceeded to named Team Healthcare as a defendant along with the other Corporate Defendants in the present litigation. (Ex. 4; Ex. 5).

**No Retaliation**

79.     Plaintiff alleged that he complained to the President of Diversity, beginning in January, 2005, about sexual harassment by Donna Chatman, the president of Team Healthcare (Ex. 5, Amended Complaint, para. 7).

80. Plaintiff received a pay raise to $21.00 per hour in March, 2005, which was 11%, following alleged complaints he claims to have made about sexual harassment by Donna Chatman. (Scheck Aff., Ex. D).

81. Plaintiff has not alleged that he was ever threatened that his employment was in jeopardy because of such complaints (Ex. 1,2, 3, 4 and 5).

82. Plaintiff claims to have complained a minimum of nine or ten times, without any repercussions (Ex. 10, 4/17/08 Tr. at 200-201).

83. Plaintiff was told by Stacey Strother that his assignment at Diversity ended due to budget cuts (Ex. 1, EEOC charge dated 10/20/05, Aff. Of Walter Sartin, para. 7; Strother Aff., para.9).

84. The termination of his assignment was a cost saving measure for Diversity (Strother Aff., para. 9).

85. After Plaintiff's assignment at Diversity ended, he was not replaced as the Payroll and Office Manager of Diversity (Strother Aff., para. 10).

Dated: New York, New York
June 19, 2008

By: Gail I. Auster (GA8428)

Law Offices of Gail I. Auster & Associates, P.C.
Law Offices of Gail I. Auster
910 West End Avenue, Suite 1A
New York, New York 10025
914-707-4000

Robert F. D'Emilia
295 Madison Avenue, 14th Floor
New York, New York 10017
212-634-3110

Attorneys for Defendants